**Robert MEYER, II, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**Appeal No. 85–590.**

United States Court of Appeals, Federal Circuit.

June 28, 1985.

Robert Meyer, II, submitted pro se.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Robert A. Reutershan, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for respondent.

Before NIES, Circuit Judge, COWEN, Senior Circuit Judge, and NEWMAN, Circuit Judge.

NIES, Circuit Judge.

This appeal is from the decision of the Merit Systems Protection Board (board), reported at 22 M.S.P.R. 151 (1984), sustaining the determination of the Office of Personnel Management (OPM) that petitioner is ineligible to apply for a position as an air traffic controller at the Department of Defense (DOD) Cherry Point, North Carolina facility.[1] We affirm.

### Background

Petitioner, a former air traffic controller for the Department of Transportation, FAA, was removed for participating in the nationwide strike in 1981. Under 5 U.S.C. § 7311[2], strike participants are barred

---

1. This decision was originally issued in the form of an unpublished opinion on May 10, 1985, but is being reissued as a published opinion.

2. 5 U.S.C. § 7311 provides, in pertinent part:
   An individual may not accept or hold a position in the Government of the United

States or the government of the District of Columbia if he—

　　*　　*　　*　　*　　*　　*

(3) participates in a strike, or asserts the right to strike, against the Government of the

from federal employment. With respect to air traffic controllers who were discharged for participating in the 1981 strike, the President alleviated the total debarment to the extent of permitting reemployment of such persons in positions "outside the scope of their former employing agency."[3]

Pursuant to 5 C.F.R. § 731.201 *et seq.,* OPM is charged with responsibility for determining the eligibility of applicants for various government positions, including former FAA controllers. OPM interpreted the President's directive as precluding employment of a former FAA controller in FAA and in certain air traffic controller positions in the Department of Defense (DOD). In accordance with this understanding, OPM requested FAA to compile a list of DOD facilities which were determined to have significant "interface" with FAA operations and, thus, not "outside the scope" of FAA. Petitioner applied for a controller position at the Marine Corps Air Station, Cherry Point, N.C., one of the facilities on the list, and OPM rated him ineligible for the position.

Petitioner appealed to the MSPB, which held that OPM had to prove that its rating of ineligibility would promote the efficiency of the service. Petitioner argued that he had been certified for Griffiss AFB and that OPM had not shown how his employment at Cherry Point would negatively affect the air traffic control system. The presiding officer agreed, finding that OPM had failed to show that there is a "significant interface or close relationship" between Cherry Point and FAA controllers to support the rating of ineligibility. In support of its action, OPM had submitted evidence that, unlike Griffiss AFB, the Cherry Point facility is a tower with instrument flight rules (IFR) and that FAA controllers telephone IFR towers to pass off aircraft at the 31,000 foot level to DOD controllers. However, the presiding official found "a telephone contact of this nature" insuffi-

cient to bar employment as an air traffic controller at Cherry Point.

The board granted a petition for review submitted by OPM and reversed the presiding official's decision, relying upon its holding in *Caruso v. OPM,* 22 M.S.P.R. 162 (1984), a similar case (decided the same day) involving negative suitability determinations for former controllers applying for positions at DOD's Point Magu, California, facility, also on FAA's prohibited list. Contrary to the finding of the presiding official, the board found that OPM's evidence of the interface between controllers in the Cherry Point IFR tower with FAA controllers, coupled with evidence of petitioner's strike participation (which had been sustained by the board), established by preponderant evidence that the negative rating given to petitioner promoted the efficiency of the service.

### Analysis

Petitioner, appearing *pro se,* contends that his case should have been decided on its own merits, that the Cherry Point facility is not the same as the Point Magu facility, that FAA and DOD have separate airspace, that FAA's list should be disregarded since *all* control towers (not merely IFR towers) require interface and coordination with FAA facilities, that the board failed to take into account personal mitigating factors, and that "there has not been a single [adverse] incident between former and current controllers." Petitioner also proffers a second list of facilities he recently received which apparently differs from the first list (although both Cherry Point and Point Magu appear on both lists), as an indication of purported confusion on the part of OPM.

As petitioner recognizes in his reply brief, our review of agency action is limited; we must sustain such action unless it is found to be:

---

United States or the government of the District of Columbia.

**3.** The Presidential directive is reproduced in the *Federal Personnel Manual Bulletin,* 731–6 (January 6, 1982).

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c).

Though petitioner challenges the "expertise" of the agencies involved, we are unconvinced that the compilation of the debarment list, and the application of that list to petitioner's employment application, violated the above criteria. OPM correctly acted within the President's directive in barring controllers removed for striking, not only from all FAA positions, but also from positions which interface with FAA as well. Substantial evidence supports OPM's determination that Cherry Point is such a facility.

### Conclusion

Accordingly, the board's decision, that OPM met its burden of establishing that its negative suitability determination with respect to petitioner promoted the efficiency of the service, is *affirmed*.

AFFIRMED.